[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]MEMORANDUM OF DECISION
The marriage of the parties was dissolved by judgment dated August 15, 1990. The parties have three minor children. The court. (Reicher, State Trial Referee) ordered the defendant to pay $73.33 per week as child support for each of the minor children for one year, $83.33 per week as child support for each of the minor children for the next year and $93.33 per week as child support for each of the minor children "to the age of 19 1/2 years old or emancipated." The dissolution judgment also provided that the plaintiff "shall carry medical insurance as available through her place of employment, for the benefit of the minor children until the age of 18 years and the defendant husband shall reimburse her for the same at the rate of $10.00 per week."
In March 1993 the defendant filed a motion to reopen judgment claiming that the defendant's income had been reduced substantially and that the order was substantially in excess of the guidelines adopted by the superior court judges. (sic.) The financial affidavits in the court file show that the plaintiff had no income (except child support) and that the defendant's net income was $413 per week. Based on the Connecticut child support guidelines in effect at that time, the child support guideline figure would have been $205 per week. The order for child support was modified to $219 per week. (The court file does not reflect whether the court did not accept the net income figure shown on the defendant's financial affidavit or if the court deviated from the child support guidelines. If the court deviated from the guidelines, the reasons for deviation were not recorded in the court file.)
The defendant was cited to appear before the Family Support CT Page 12641 Magistrate Division on February 11, 1997, to show cause why he should not be held in contempt of court for failure to pay support and/or maintain health insurance as ordered by the court. The defendant then filed an Application for Order to Show Cause Why Judgment Should Not be Reopened and Support Modified claiming that since the March 1993 modification, "there has been a substantial change in the income of the defendant which change constitutes a substantial change of circumstances." The two matters were heard concurrently.
Although the contempt proceeding was initiated by the Support Enforcement Division, the plaintiff retained Attorney Robert B. Fried to represent her in these proceedings. Attorney Fried subpoenaed pertinent financial documents and represented the plaintiff at the hearings held on the issues of contempt and modification.
At the conclusion of the hearing held on June 23, 1997, the defendant was granted permission to file a child support guideline worksheet provided a copy be furnished to the plaintiff and the plaintiff was given an opportunity to object to the worksheet. By letter dated July 1, 1997, the plaintiff was given an opportunity to object to the worksheet. By letter dated July 1, 1997, the defendant forwarded the worksheet, together with calculations explanations, which is attached as Appendix A and the plaintiff's letter dated July 7, 1997, responded to the worksheet, calculations and explanations, which is attached as Appendix B. Copies of both letters and accompanying documents are attached.
The defendant is self employed. According to the information furnished by his accountant, the defendant's net income from January 1, 1997, through June 19, 1997 was $478.70 per week. See Appendix A. Taking this information at face value, the defendant by his own figures is making $65 per week more than was shown on his March 1993 financial affidavit. The defendant has failed to show a substantial change in his income which would warrant a downward modification of the child support order.
The plaintiff s net income is $437 per week. As stated above, according to the information furnished by his accountant, the defendant's net income from January 1, 1997, through June 19, 1997 was $478.70 per week. The plaintiff objects to the deductions for payroll taxes and medical insurance being considered in arriving at the defendant's net income for child CT Page 12642 support guideline purposes. See Appendix B. Without the deductions for payroll taxes and medical insurance, according to the information furnished by the accountant, the defendants net income would be $478.70 per week. (Based on a net income for the defendant of $478 per week the child support guideline figure would be $193 per week, and on a net income of $547 per week the guideline figure would be $212 per week.) Regardless of the net income figure used it is important to note that the income figures provided by the accountant were based on information provided to the accountant by the defendant. By his own testimony, the defendant acknowledged that when he does work for his family and friends the money paid to him does not go into the bank account and that cash payments do not always go into the account. It is found that the defendant's actual income would justify the $219 per week child support order presently in effect. The defendant's motion for modification is denied.
There is a child support arrearage owed to the plaintiff in the amount of $11,800 as of June 20, 1997. There is a medical insurance payment arrearage owed to the plaintiff in the amount of $2,340 as of June 23, 1997. The defendant is ordered to pay $44 per week on the child support arrearage owed to the plaintiff commencing November 7, 1997. On the medical insurance arrearage, the defendant is ordered to pay a lump sum of $1170 directly to the plaintiff or before 10:00 a.m. on December 16, 1997. The contempt is continued to December 16, 1997, and the defendant is ordered to appear in court on that date. The Support Enforcement Division is authorized to excuse: the defendant's appearance in court on that date if he is in compliance with his weekly order and the $1170 lump sum has been paid. The defendant is ordered to pay another lump sum on the medical arrearage directly to the plaintiff in the amount of $1170 on or before 10:00 a.m. on February 3, 1998. The contempt is also continued to February 3, 1998, and the defendant is ordered to appear in court on that date. The Support Enforcement Division is authorized to excuse the defendant's appearance in court on that date if his in compliance with his weekly order and the $1170 lump sum has been paid.
The plaintiff is ordered to notify the Support Enforcement Division immediately upon receipt of any and all payments made by the defendant on the medical insurance payment arrearage.
The defendant is ordered to pay attorney's fees to the plaintiff in the amount of $1,000 by April 1, 1998. CT Page 12643
Katherine Y. Hutchinson Family Support Magistrate
APPENDIX A
 McVANE, BELLOBUONO, KUZMAK, WIEZALIS BIBISI, LLP ATTORNEYS AT LAW 801 MAPLE AVENUE POST OFFICE BOX 341010 HARTFORD, CONNECTICUT 06134-1010 (860) 956-0043 TELECOPIER (860) 520-4134 TELECOPIER (REAL ESTATE) (860) 956-2653
M PATRICIA McVANE FRANCIS J. McVANE MICHAEL C BELLOBUONO (1914-1984) RICHARD P. KUZMAK RAYMOND J WIEZALIS JOSEPH W. BIBISI July 1, 1997
The Honorable Katherine Y. Hutchinson Chief Magistrate 108 Valley Street Willimantic, CT 06226
RE: Docket No. FA 89 0436579S Lisa Rivera v. Ramon I. Rivera
Dear Magistrate Hutchinson:
Enclosed please find two (2) child support worksheets, together with calculations and explanations. One is for the calendar year 1996 and is based solely upon the 1996 Federal Income Tax Return; the other is based upon the 1997 income affidavits for the first six (6) months of
I have submitted the foregoing to Attorney Fried. He will send you his written reply and copy me.
Very truly yours, CT Page 12644
Joseph W. Bibisi
JWB:an Enclosures
cc: Robert B. Fried, Esq.
APPENDIX A
 CONNECTICUT CHILD SUPPORT AND ARREARAGE GUIDELINES WORKSHEET A — Page 1
Lisa Rivera Ramon I. Rivera _________________________ MOTHER FATHER NAME OF CUSTODIAN
COURT______________ D.N./CASE No. FA89 0436579 NUMBER OF CHILDREN 3
CHILD'S NAME DATE OF BIRTH CHILD'S NAME DATE OF BIRTH Ramon 4/12/84 _____________ ________________ Christina 6/01/85 _____________ ________________ Juliana 4/24/88 _____________ ________________
I. Net Income Computation (Weekly amounts) MOTHER FATHER
 1. Gross income (attach verification) $572 $ 577.63**
(1996 Gross) 2. Number of exemptions for tax purposes 1 1 3. Federal income tax $61 $61.65 4. State and local income tax $5 $14.94 5. Social security tax or mandatory retirement $44 $81.62 6. Health insurance premiums (other than child) $0 $45.81 7. Union dues or fees $5 $0 *8. Unreimbursed work-related day care $0 $0 9. Other alimony and child support orders $0 $0 10. Sum of lines 3 — 9 $115 $204.02 11. Net income (line 1 minus line 10) $457 $373.61
II. Current Support Determination
12. Combined net weekly income (nearest $10.00) $830.61 13. Basic obligation (from schedule) $351.00 14. Check here if noncustodial parent is a low-income obligor (see instructions) ______ 15. Child's health insurance premium $0 $10 16. Total obligation (Line 13 minus noncustodial CT Page 12645 parent's line 15 amount if line 14 is checked; line 13 plus line 15 total for all other cases) $361 17. Each parent's decimal share of line 12 (If line 14 is checked, skip this line and line 19, and enter the line 16 amount in the noncustodial parent's column on line 18.) .55 .45 18. Each parent's share of the total obligation (Line 17 times line 16 for each parent) $198.55 $162.45 19. Health insurance premium adjustment $0 $10.00 20. Social security benefits adjustment $0 $0 21. Sum of lines 19 and 20 (for each parent) $0 $10.00 22. Recommended support amounts (Line 18 minus line 21) $198.55 $152.45 23. Current support order (Noncustodial parent(s) only. If different from line 22 amount, explain in section VI.) $ ______ $152.45
GO TO THE NEXT PAGE
Mother received $123 per week for child that is not Mr. Rivera's child and has $100 per week day care expense for said child.
APPENDIX A
 CONNECTICUT CHILD SUPPORT AND ARREARAGE GUIDELINES WORKSHEET A — Page 1
Lisa Rivera Ramon T. Rivera Lisa Rivera MOTHER FATHER NAME OF CUSTODIAN
New Britain COURT Superior Court D.N./CASE NO. FA89 043657 NUMBER OF CHILDREN 3
CHILD'S NAME DATE OF BIRTH CHILD'S NAME DATE OF BIRTH Ramon 04/12/84 ________________ ________________ Christine 06/01/85 ________________ ________________ Juliana 04/24/88 ________________ ________________
I. Net Income Computation (Weekly amounts) MOTHER FATHER
 1. Gross income (attach verification) $572 $677.62 (1977 gross) CT Page 12646 2. Number of exemptions for tax purposes 4 4 3. Federal income tax $38 $45.69 4. State and local income tax $5 $18.00 5. Social security tax or mandatory retirement $44 $89.42 6. Health insurance premiums (other than child) $0 $45.81 7. Union dues or fees $0 $0 8. Unreimbursed work-related day care $0 $0 9. Other alimony and child support orders $0 $0 10. Sum of lines 3 — 9 $87 $198.92 11. Net income (line 1 minus line 10) $485 $478.70
II. Current Support Determination
12. Combined net weekly income (nearest $10.00) $963.7 13. Basic obligation (from schedule) $378.00 14. Check here if noncustodial parent is a low-income obligor (see instructions) _________ 15. Child's health insurance premium $0 $10 16. Total obligation (Line 13 minus noncustodial parent's line 15 amount if line 14 is checked; line 13 plus line 15 total for all other cases) $388 17. Each parent's decimal share of line 12 (If line 14 is checked, skip this line and line 19, and enter the line 16 amount in the noncustodial parent's column on line 18.) 5032 4967 18. Each parent's share of the total obligation (Line 17 times line 16 for each parent) $195.24 $192.71 19. Health insurance premium adjustment $0 $10 20. Social security benefits adjustment $0 $0 21. Sum of lines 19 and 20 (for each parent) $0 $10 22. Recommended support amounts (Line 18 minus line 21) $195.24 $182.71 23. Current support order (Noncustodial parent(s) only. If different from line 22 amount, explain in section VI.) $195.24 $182.71
GO TO THE NEXT PAGE
1-1-97 through 6-19-97: 24.285 weeks ____________________________________________________________________________ | | | | | | | | | | | 1st Qtr | 2nd Qtr | Total | |Weekly | | | | 1997 | 1997 | 6 Mo | | | |______|______________|____________|__________|__________|_________|_______| CT Page 12647 | | | Gross | 2642860 | 1751214 | 4394074 | | | |___|__|______________|____________|__________|__________|_________|_______| | | | Sales Tax | (1391-) | (61353) | (200453) | | | |___|__|______________|____________|__________|__________|_________|_______| | | | Expenses | (1687884) | (804242) |(2492126) | | | |___|__|______________|____________|__________|__________|_________|_______| | | |Payroll Taxes | (0) | (55874) | (55874) | | | |___|__|______________|____________|__________|__________|_________|_______| | | | Net Profit | 815876 | 829745 | 1645621 | 24.285 | 67262 | |___|__|______________|____________|__________|__________|_________|_______| | | | | | | | | | |___|__|______________|____________|__________|__________|_________|_______| | | | Fed. Income | | | | | | | | | Tax |(annualized)| 2376/2 | 1188 | | 4569 | |___|__|______________|____________|__________|__________|_________|_______| | | | State Income | | | | | | | | | Tax |(annualized)| 936/2 | 468 | | 1800 | |___|__|______________|____________|__________|__________|_________|_______| | | |Self | (social | | | | | | | |Employment Tax| security) | | 2325 | | 8942 | |___|__|______________|____________|__________|__________|_________|_______| | | | Health | | | | | | | | | Insurance | | | | | 4581 | |___|__|______________|____________|__________|__________|_________|_______| | | | Total | | | | |_______| | | | Deductions | | | | | 19892 | |___|__|______________|____________|__________|__________|_________|_______| | | | | | | | | | |___|__|______________|____________|__________|__________|_________|_______| | | | Balance | | | | | 478.70| |___|__|______________|____________|__________|__________|_________|_______| | | | | | | | | | |___|__|______________|____________|__________|__________|_________|_______| | | | | | | | | | |___|__|______________|____________|__________|__________|_________|_______| MUGFORD, RADZIEWICZ CO.
[EDITORS' NOTE: THE CHECK IS ELECTRONICALLY NON-TRANSFERRABLE.]
MERITINSURANCESERVICES, INC. INVOICE
 Invoice #: 20092 Invoice Date: 18-Apr-97 CT Page 12648 Due Date: 30-Apr-97 Coverage Period: 5/1/97-5/31/97
Bill To: R. I. Rivera/aba/New Britain Maintenance 393 Main Street East Berlin, CT 06023
SSN Employee Name Premium
040323998 Ramon Rivera $198.52 _____________________________ Subtotal: $198.52 _____________________________ Previous Balance: $0.00 _____________________________ Total: $198.52
 Kaiser Permanente Your Agent is THERIAULT, RON
 Please make checks payable to: Merit Insurance Services, Inc.
Please write the invoice number on your check.
Thank you.
 639 PROSPECT AVENUE * WEST HARTFORD, CONNECTICUT 06105 * (860) 233-3626 FAX (860) 233-8547
MERITINSURANCESERVICES, INC. INVOICE
 Invoice #: 22008 Invoice Date: 22-May-97 Due Date: 06-Jun-97 Coverage Period: 6/1/97-6/30/97
Bill To: R. I. Rivera/aba/New Britain Maintenance 393 Main Street East Berlin, CT 06023
SSN Employee Name Premium
CT Page 12649
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 Ramon Rivera $198.52 _____________________________ Subtotal: $198.52 _____________________________ Previous Balance: $0.00 _____________________________ Total: $198.52
 Kaiser Permanente Your Agent is THERIAULT, RON
 Please make checks payable to: Merit Insurance Services, Inc.
Please write the invoice number on your check.
Thank you.
 639 PROSPECT AVENUE * WEST HARTFORD, CONNECTICUT 06105 * (860) 233-3626 FAX (860) 233-8547
 KAISER PERMANENTE
Northeast Region
 KAISER FOUNDATION HEALTH PLAN OF CONNECTICUT, INC.
GROUP MEDICAL AND HOSPITAL SERVICE AGREEMENT FACE SHEET
GROUP NAME: MERIT-GROUP HMO 20/10 SUBGROUP NAME: R. I. RIVERA/DBA NEW BRIT MAINT GROUP/SUBGROUP NBR: 5073-297
ACCOUNT EXECUTIVE: SMALL BUSINESS SALES OFFICE ACCOUNT EXEC PHONE: (800) 550-9389
INTRODUCTION:
 The Group Medical and Hospital Service Agreement, supplemented by this Face Sheet and any attached amendments, has been entered into between KAISER FOUNDATION HEALTH PLAN OF CONNECTICUT, INC., herein called "Health Plan", and the organization named above, herein called "Group".
Health Plan, in consideration of the monthly payments to be paid to CT Page 12650 Health Plan by Group and in consideration of supplemental charges to be paid by or on behalf of members, agrees to arrange necessary medical and hospital services and other benefits as specified in the benefit schedule and addendum attached hereto for eligible persons who enroll hereunder, in accord with the terms, conditions, limitations and exclusions of this Agreement.
MONTHLY RATES: THE MONTHLY PAYMENTS PER NON-MEDICARE FAMILY UNIT REQUIRED UNDER THIS AGREEMENT ARE:
 Subscriber, Subscriber Subscriber Spouse 
Subscribers age Subscriber Spouse Child(ren) Child(ren) 0 through 29 $ 91.23 $ 181.44 $ 174.87 $ 280.56 30 through 39 $ 108.98 $ 211.30 $ 203.92 $ 345.91 40 through 49 $ 142.35 $ 262.16 $ 246.16 $ 392.63 50 through 59 $ 198.52 $ 412.85 $ 359.24 $ 502.44 60 through 64 $ 266.78 $ 527.73 $ 447.24 $ 624.22 65 and over $ 314.81 $ 609.27 $ 492.83 $ 768.26
AMENDMENTS AND ADDITIONAL PROVISIONS FOR MEDICARE (IF APPLICABLE) AND NON-MEDICARE GROUP MEMBERS:
ALLRGY SHOT/TRAVEL IMMUNIZATION OVC APPLIES (IF APPLICABLE) DENTAL: NO BENEFIT DME/BPD: $1500 CAP, NO CHARGE DME/BPD: NO CHARGE, MEDICARE GUIDELINES (M) EMER SVCS: $25 COPAY (+50%/1ST $100 LIVE OUTSIDE SA) HOSI: $500 COPAY HOSI: $500 OR 20% COPAY (M) HOSO: NO CHARGE MHIP: 60 DAYS, $500 COPAY (PDS) MHOP: 1-10/$0, 11-20/$25, 21-30/$50 OR 50% (CAL. YEAR) OPTICAL: GLASSES/LENSES APPROVED BY MEDICARE (M) OPTICAL: NO BENEFIT OVC: $20 COPAY ($0 MATERNITY) PSOT: IN: $0 OUT: $20. (2 MONTHS PER CONDITION) PSOT: IN: 0/OUT: OFFICE VISIT COPAY APPLIES-PER MEDICARE (M) RX: $10 COPAY SAIP: 45 DAYS, $500 COPAY SAOP: VISITS 1-60, NO CHARGE (CAL. YEAR) SNF: 100 DAYS PER BENEFIT PERIOD-NO CHARGE STUDENT FOLLOW-UP CARE: $500
DENTAL: DISCOUNT THROUGH DENTAL BENEFITS PROVIDER CT Page 12651
OVERAGE DEPENDENT TO AGE 19 MONTH END OVERAGE STUDENT TO AGE 24 MONTH END THIS IS A NON FEDERALLY QUALIFIED PRODUCT
KAISER PERMANENTE
Northeast Region
RATES FOR MEDICARE PLUS MEMBERS WHO ARE ENTITLED TO BOTH PARTS A AND B OF MEDICARE AND HAVE AUTHORIZED HEALTH PLAN TO RECEIVE REIMBURSEMENT FROM MEDICARE:
One Medicare Plus member: $87.34
RATES FOR MEDICARE ELIGIBLE MEMBERS WHO ARE NOT ENTITLED TO PARTS A AND B OF MEDICARE, OR FOR THOSE MEMBERS WHO HAVE NOT AUTHORIZED HEALTH PLAN TO PLAN TO RECEIVE REIMBURSEMENT FROM MEDICARE:
 Rates for Medicare Plus eligible members without Part A: $87.34 Rates for Medicare eligible members without Part B: $314.81 Rates for Medicare eligible members without Parts A or B: $314.81
OPEN ENROLLMENT PERIOD:
FROM: 03/01 THROUGH: 03/31 EFFECTIVE: 04/01
EFFECTIVE DATE OF AGREEMENT: Executed at Farmington, Connecticut to provide coverage for the period from Apr. 01, 1997 through Mar. 31, 1998.
ACCEPTED BY: _______________________ SUBGROUP NAME: R. I. RIVERA/DBA NEW BRIT MAINT TITLE: _____________________________ DATE: ______________________________
Please return a signed copy of this Face Sheet to Kaiser Health Plan, attention "Department of Benefits Policy and Administration", 76 Batterson Park Road, Farmington, CT 06034-4011 and retain one copy for your records.
APPENDIX B
 ROBERT B. FRIED A orney a Law
2 CONGRESS STREET CT Page 12652 HARTFORD, CONNECTICUT 06114-1024
 TELEPHONE 728-6644 TELECOPIER 249-4073 AREA CODE 860
July 7, 1997
The Honorable Katherine Y. Hutchinson Chief Magistrate 108 Valley Street Willimantic, CT 06226
 Re: Docket No. FA 89 0436579 S Rivera v. Rivera
Dear Magistrate Hutchinson:
In order to avoid another hearing to present argument as to whether or not Attorney Bibisi's new Guideline worksheet should be used, Attorney Bibisi and I have agreed that I might offer my comments by letter.
As Your Honor will recall, I strongly objected to a new worksheet being prepared and presented after the close of evidence and argument. Your Honor ruled against me, but I understood that the worksheet would use the numbers already in evidence. In fact, Mr. Bibisi has chosen to present two separate guideline worksheets; one for 1996 and one for January 1 — June 19, 1997. Your Honor did not request a worksheet for 1996 and it should be summarily disregarded.
As to the 1997 worksheet, Mr. Bibisi provided backup documentation as to the computations resulting in a worksheet notprovided to your Honor after I objected to the computations. I am submitting that document which was prepared by Mr. Rivera's accountant because one number appearing on that document, which I believe was carried through to arrive at a "gross" weekly income was a payroll tax of $558.74; that number should be disregarded and computations adjusted accordingly; It appears on no affidavits or other Exhibits put forth by the Defendant; nor did he testify of such a number. (See Mr. Rivera's manuscripted affidavits for January — March, 1997 and April — June 19, 1997 — Defendant's Exhibit 12). To allow its appearance at this time deprives me of the right of cross-examination CT Page 12653
The same is true of a deduction on the guideline worksheet for medical insurance in the amount of $46 per week. This case was tried on three occasions between February and June 20, 1997. Mr. Rivera was represented by counsel at all times and presented standard financial affidavits as well as manuscripted affidavits to the court. as well as several guideline worksheets. To allow him to claim a deduction that runs contrary to evidence proffered by him, without opportunity of cross-examination, flies in the face of a fair hearing.
Also, Mr. Bibisi does not reflect my client's unreimbursed day care expense of $100 per week.
Finally, and perhaps most important, it should be noted that Mr. Bibisi's guideline worksheet reflects Mr. Rivera's net income as $478.70. His 1993 financial affidavit reflects a net income of $413 per week. Therefore there is no showing by the Defendant that there is a substantial change of financial circumstances. The threshold not having been met, the Court should not inquire further.
Very truly yours
Robert B. Fried
RBF:bmp